[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff from an assessment of damages made by the defendant with respect to the taking of a portion of her property in the Town of South Windsor as shown on a map entitled: "Town of South Windsor Map Showing Land Acquired From Evelyn F. Johnson the State of Connecticut construction of Chapel Road Scale 1" = 40' January 1988 Robert W. Gubala Transportation Chief Engineer Bureau of Highways." Copies of the map were introduced into evidence as Exhibits B and 1. The portion taken was also described in the complaint.
The parties stipulated that the date of the partial take was February 10, 1989 and that it consisted of 0.096 of an acre more or less in area. Also taken was an easement to slope in an area of 0.077 of an acre, more or less, and a drainage right CT Page 4010 of way in an area consisting of 0.287 of an acre more or less. The defendant also acquired a right to reconstruct a driveway and to install a sedimentation control system. Damages as assessed by the defendant in the sum of $4,600 were deposited with the clerk of the superior court and withdrawn by the plaintiff.
The subject property consists of 9.62 acres of relatively level undeveloped land in the southwesterly section of South Windsor lying on the south side of Chapel Road. At the southeast corner of the property there is a thirty foot right of way giving access to Burnham Street. Both Chapel Road and Burnham Street are heavily travelled. Land uses in the area are mostly residential. There is a residential development zoned for 20,000 square foot lots across Chapel Road from the subject property and there is a residential development in East Hartford on the other side of Burnham Street across from the right of way to the subject property. Land along Burnham Street in South Windsor is zoned industrial. The frontage of the subject property along Chapel Road is zoned rural residential to a depth of 200 feet and the rear portion of the property is zoned industrial. The property slopes down gently from north to south and has a sizeable amount of wetlands towards the rear portion. It is in a growing neighborhood which is primarily residential. It is near the junction of South Windsor, East Hartford and Manchester so that future land use depends upon decisions made in towns other than South Windsor. Although quality of residential development in the vicinity has been good, land fronting on Chapel Road would not be as desirable as other residential locations in South Windsor. The northerly portion of the property which is on Chapel Road and is zoned RR residential consists of 3.69 acres. Permitted uses are generally dwellings for one family, professional offices and agricultural uses. minimum lot area permitted is 40,000 square feet, with minimum width of 175 feet, front yard of 50 feet and side yard of 20 feet. The balance of the property is zoned industrial and consists of 5.93 acres. Normal industrial uses are permitted in this zone. South Windsor does not permit rear lots, and building lots in both zones must have the required minimum frontage on a town road. The minimum lot frontage in an industrial zone is 35 feet.
The property taken is a narrow strip of land running along the entire frontage on Chapel Road. The depth of the narrow strip is 9 feet, more or less, at its easterly end and 4 feet, more or less, at its westerly end. The frontage of 640 feet on Chapel Road will be reduced to 638 feet on the reconstructed Chapel Road. The area of the property taken is 0.096 of an acre, more or less. The slope easement to support Chapel Road will primarily affect the eastern half of the CT Page 4011 frontage and will be a slight slope. The right to cross the easement will be retained. The drainage right of way is 25 feet in width and runs along the westerly line of the subject property. It consists in part of an underground concrete pipe running from Chapel Road with an open riprap channel running from the southerly end of the pipe. The driveway will be at the westerly end of the property.
Irving C. Harney, Jr., a qualified real estate appraiser, testified for the plaintiff. It was his opinion that the highest and best use of the property is for residential and industrial development in accordance with the zoning regulations. He used comparable sales to arrive at his opinion of the fair market value of the property both before and after the take. He opined that the portion of the property which is in the RR residential zone would accommodate three building lots. Using comparable sales, he estimated that the value of each building lot was $75,000. He discounted the value of each lot by 10% for the estimated cost of obtaining necessary approvals and expenses of sale. He estimated the total value of the residential portion before the take to be of $202,500. He opined that the portion of the property which is in the industrial zone had a value before the taking of $30,000 per acre. He took out the three building lots and concluded that the remaining land consisted of 6.5739 acres. He opined that the value of this land before the take was $197,200. His estimated total value before the take was $399,700, which he rounded to $400,000. Harney concluded that the take would reduce the residential portion from 122,500 square feet, more or less, to 118,340 square feet, more or less. He used the same unit value of $1.65 per square foot and opined that the value of the residential portion after the take was $192,500. It was Harney's opinion that the industrial land could be reached from Burnham Street over the right of way although he did not know whether that would be permitted under the zoning regulations. In order to use the industrial land, it would be necessary to get around the wetlands. The riprap channel prevents access to a part of the land and Harney opined that a bridge would be necessary. He therefore reduced the value of industrial land by 13% as a result of the take and estimated its after take value at $169,600. The estimated total value after the take in Harney's opinion was $362,000. He estimated damages at $38,000.
Karl G. Kaffenberger, also a qualified real estate appraiser, testified as an expert witness for the defendant. It was his opinion that the highest and best use of the property is residential development of the land fronting on Chapel Road and use of the rear land in the industrial zone as open space to complement the residential development. Because CT Page 4012 of information received from officials in the Towns of South Windsor and East Hartford, Kaffenberger opined that the rear portion could not be developed for industry. He cited both difficulty of access and the extensive wetlands in the area. Kaffenberger was of the opinion that a variance could be obtained which would permit four lots on the residential land along Chapel Road. He used comparable sales to arrive at a total retail value for the four lots and deducted development costs. He estimated the value of each lot to be 92,000 which he reduced by 45% for development and marketing costs. He calculated that the market value of the four lots making up the residential portion was $202,400 which he rounded to $202,000. Using comparable sales, Kaffenberger estimated the value of the open space to be $3,900 per acre. He calculated that the rear 5.93 acres had a market value $23,000 rounded. He opined that market value of the subject property before the take was $225,000. In his opinion, the highest and best use after the take was as it was before the take. The slope easement and the loss of the strip taken would not affect the division of the residential portion into four lots, but the drainage right of way would have a negative effect on the value of the lot over which it runs and would pose a hazard to the occupants of all four lots. The wetlands would be added to by the drainage and a greater proportion of wetlands would be included in the four lots. Kaffenberger opined that the retail value of each lot after the take was $89,000. He reduced the value by 45% as he had done before the take and estimated the market value of the residential portion after the take was $196,000 rounded. In Kaffenberger's opinion, the drainage right of way had a negative effect on the rear portion both because it cut off access to the land to the west of the right of way and because it could enlarge the wetland area. He opined that the value of the rear land after the take was $3,700 per acre or $22,000 rounded. The estimated total market value of the land after the take he estimated at $218,000. He estimated the damages to be $7,000.
Approximately 18 months after the take, the defendant condemned another portion of the subject property. This second take occurred after the appraisers had prepared their reports. The second taking took substantially all of the portion of the premises in the industrial zone. Thus, as the plaintiff points out, this appeal concerns for the most part the value of the land in the residential zone. Accordingly, it makes little difference whether the rear land is valued as industrial acreage or as open space for the purpose of this appeal.
Each of the appraisers concluded that a reasonable buyer would purchase the land fronting on Chapel Road for development as residential lots and that it was adaptable to development. CT Page 4013
In the event, when the drainage system was constructed in the right of way, the length of the concrete pipe was less than that originally planned and consequently the length of the riprap channel was greater than originally planned. The increased length of the riprap channel cut off access to a piece of the industrially zoned land to the west of the channel. Lucius W. Tallman, called as a witness for the plaintiff, testified that he is in the land clearing and logging business. In addition to his testimony, a statement the truth of which was sworn to by Tallman was filed after the hearing by agreement. The statement was submitted after a conference with counsel, and by agreement between counsel, in order to clarify Tallman's testimony, and it is marked Court Exhibit 1. Tallman needs a staging area for storage of logs and wood chips until he can sell them. When he is clearing a large tract, he can store logs and chips on site. When he is clearing small tracts, he has to rent staging areas because he needs the room and because he cannot stay on the site after clearing it. He was hired to clear land for the Chapel Road project in 1989. His jobs are all small now and he needs a staging area. He offered to pay $1000 per month to rent the land to the west of the drainage right of way as a staging area. If he had been able to get access, he would still have been using the land. Instead, he rented a smaller section from the plaintiff for $300 per month. He is still using this section. The plaintiff was prevented by the taking of the drainage easement and the construction of the riprap channel from renting a portion of the industrially zoned land. The plaintiff claims that she was prevented from renting the land to the west of the drainage right of way from the time the construction was completed in July 1989 to the date of the second taking on February 12, 1991.
After viewing the property and giving due consideration to the testimony of the other witnesses and to all of the evidence, and to my own knowledge of the elements establishing value, I conclude that the damages sustained by the plaintiff are $20,000. Judgment may enter for the plaintiff to recover the sum of $15,400 in addition to the $4,600 already paid, with interest on said further sum from the date of taking to the date of payment, together with costs and an allowance of $1,000 towards her appraisal fees.
GEORGE D. STOUGHTON STATE TRIAL REFEREE